WILLIAM J. LETTERS, JR., *vs.* COMMONWEALTH
(and a companion case[1]).

Suffolk. October 7, 1963. — November 4, 1963.

Present: SPALDING, WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Practice, Criminal,* Plea, Right to trial. *Constitutional Law,* Due process of law, Right to trial.

A conclusion was required that during the trial of indictments for rape and related offences two of the defendants were unconstitutionally coerced into pleading guilty and foregoing their right to completion of the trial by statements of the judge to their counsel to the effect that if they insisted on proceeding with the trial and were found guilty their sentences would be far more severe than the sentences he proposed to impose upon pleas of guilty, even though the motive of the judge was to relieve the complainant of the necessity of taking the stand and, as to one of the two defendants, there had been evidence of his guilt on the charge of rape and he had acknowledged to his counsel guilt on at least some of the charges; and on writs of error the pleas of guilty were expunged, the judgments entered on the pleas were reversed, and the cases were remanded to the Superior Court.

Two PETITIONS for writs of error filed in the Supreme Judicial Court for the county of Suffolk on November 21, 1961, and October 18, 1961, respectively.

The cases were heard by *Reardon, J.*

*Arnold W. Olsson (John W. Linzee* with him) for the petitioners.

*James W. Bailey,* Assistant Attorney General (*William T. Buckley,* District Attorney, *& John F. Driscoll,* Assistant District Attorney, with him), for the Commonwealth.

[1] The companion case is Paul J. Guilmette *vs.* Commonwealth.

WHITTEMORE, J.   At issue on each of these petitions for writs of error is whether the petitioners' pleas of guilty were coerced.   The single justice reserved and reported each case without decision.   The facts are set out in his findings.

The petitioner Letters, then an eighteen year old high school junior, pleaded guilty on December 19, 1960, to two indictments for being an accessory before the fact of rape and to a third indictment for conspiracy to rape.   On December 20, 1960, he was sentenced on each of the two accessory indictments to concurrent terms of from fifteen to twenty years at the Massachusetts Correctional Institution at Walpole.   The conspiracy indictment was filed.   Trial of Letters and other defendants, indicted for rape and on related charges, had begun on December 5, 1960.

On December 10, during the course of the trial, Letters' attorney told Letters in the presence of his parents, and of a codefendant and the latter's uncle and aunt, that the trial judge had called him into the lobby on two or three occasions and had told him that if Letters were found guilty he would receive two life sentences to be served consecutively but if Letters pleaded guilty he would receive but one life sentence.   The judge had suggested that the attorney talk to Letters; the attorney had told the judge that he felt that Letters should not plead guilty to rape.

On December 15 there was another conference attended by five of the defendants still on trial, their counsel and families, and several court officers.   Each attorney related what had taken place in a meeting with the judge in his lobby.   The group was informed that a jury finding of guilty on the charge of rape and other charges would produce "life on life" sentences but a plea of guilty would involve just one life sentence; the judge would be severe if it became necessary for the complainant to take the stand.

The same group met again on December 19.   Letters' counsel then told Letters that he had again seen the trial judge and that Letters would receive the maximum sentence if found guilty "but with the charge of 'rape' no longer

being pressed against him upon a plea of guilty his sentence would be fifteen years.'' After some talk, which included discussion of the probable date of Letters' parole eligibility and his family's desire to see the judge, the other defendants agreed to plead guilty. Letters, however, was reluctant to change his plea since the evidence at the trial had indicated that he endeavored to leave the scene of the crime when he discovered what was happening there. Letters at this point understood that lighter sentences would be imposed on all the defendants who had not yet pleaded guilty only in the event that all did so and that if he alone failed to plead his codefendants would be in jeopardy of heavier sentences. The attorney told Letters that the decision was his, but the family had the impression that the attorney favored the plea. A deputy knocked on the door but more time was asked and given during which Letters decided to plead guilty.

The criteria which should guide the sentencing judge are well understood. They include punishment, deterrence, and correction. The record and character of the defendant are relevant. Perhaps in a particular case there might be some basis for an adverse conclusion as to a defendant's character from the circumstance that, knowing his guilt, he elects to stand on his right to trial at the cost of embarrassment and shame to the innocent complaining witness who has already suffered from his crime. In view, however, of what is at stake for the defendant it would appear difficult to conclude that a decision not to plead guilty, at least considered alone, is a significant reflection of character. The circumstances, if entertainable at all, would be relevant at the time for sentencing and not before. But, plainly, a defendant, whatever his character, may not be punished for exercising his right to trial and, therefore, the fact that he has done so should be given no weight in determining his sentence.

We recognize that the purpose of the statement of the proposed consecutive sentences was to protect the victim of the crimes from further hurt. It was, however, in effect

notice that the petitioner would be severely punished for electing to stand trial. The case is stronger than *United States* v. *Tateo,* 214 F. Supp. 560 (S. D. N. Y.), where the trial judge (who lacked the power to impose consecutive sentences), after substantial evidence of the defendant's guilt, announced that in the event of conviction he would impose a life sentence on the kidnapping count and that the other sentences would run consecutively. The defendant's attorney had thereupon urged a plea of guilty. We agree with that court (p. 567): "No matter how heinous the offense charged, how overwhelming the proof of guilt may appear, or how hopeless the defense, a defendant's right to continue with his trial may not be violated. His constitutional right to require the Government to proceed to a conclusion of the trial to establish guilt by independent evidence should not be exercised under the shadow of a penalty . . . . To impose upon a defendant such alternatives amounts to coercion as a matter of law." Accord, *Euziere* v. *United States,* 249 F. 2d 293 (10th Cir.). See *Waley* v. *Johnston,* 316 U. S. 101.

It is of some significance, but not determinative, that the petitioner was reluctant to plead, apparently having thought that his attempt to leave the scene when he discovered what was happening might help in his defence. There was an increase in the apparent coercive pressure because of Letters' understanding as to the possible fate of the other defendants but, again, this is not a decisive factor.

The petitioner Guilmette, seventeen years of age when arraigned, pleaded guilty on December 15, 1960, to four indictments on which, on December 20, he was sentenced on concurrent sentences to imprisonment at the Massachusetts Correctional Institution at Walpole. The indictments and the disposition were as follows: rape, life; robbery, life; operating a motor vehicle after suspension of license, eight to ten years; kidnapping, eight to ten years. Guilmette was one of the thirteen defendants, including Letters, whose trial had begun on December 5, 1960. Between that date and December 10 Guilmette's attorney talked at least twice

with the trial judge as to the possibility of a plea of guilty.

On December 10 the attorney talked with Guilmette, and in the course of the talk obtained Guilmette's signature to the following statement which, prepared by the attorney, was prompted by an indication from the judge concerning the length of sentences he would impose if Guilmette were found guilty as distinguished from those which would be imposed were he to plead. "December 10, 1960 Worcester County Jail Worcester, Massachusetts At 11:30 A.M., today Attorney Robert V. Mulkern advised me as follows: It is his opinion that if the trial of the indictments presently pending against me is continued in the Worcester Superior Court, and if the jury finds me guilty on all or any of the indictments, then in the opinion of Attorney Mulkern, I shall receive the maximum sentences permissible on whatever indictments I stand convicted and that the sentences will take effect 'from and after' meaning one to commence upon the expiration of another. It is further his opinion that should I plead guilty at this time the sentences imposed will be less severe. I have further been advised that I should plead guilty only if in fact I am guilty. I have read the above. Paul J. Guilmette."

On the morning of December 15 one of the defendants testified that he had seen Guilmette in the acts of raping the complainant and taking money from her pocketbook. Following this testimony and before cross-examination of the witness the trial judge called all counsel to his lobby. He there stated to Guilmette's counsel that "the game is over" or words to that effect. He suggested that the attorney speak to his client along the line previously discussed by the judge and the attorney, that is, that if Guilmette were found guilty he would be given three life sentences to be served consecutively but if he pleaded guilty there would be "a life sentence on the rape or robbery indictments with other maximum sentences to be served concurrently."

The attorney reported this talk to Guilmette and asked him what had happened at the scene of the crime. Guilmette replied: "I was there" and "I did do it." After

discussion as to the date of parole eligibility in the event that the sentences were concurrent, the attorney told Guilmette that if he were found guilty he might never get out of prison, but that the decision lay with him. Guilmette's mother, brother, and girl friend joined the conference. Guilmette, his mother, and girl friend were crying and upset. Guilmette and his brother understood that the judge's views were motivated by his desire to obviate the need of the complainant taking the stand. Guilmette then decided to plead guilty.

Guilmette's case is like Letters' in essential aspect. The pleas of guilty were induced at least in part by threat of punishment for exercising a basic constitutional right. The apparent hopelessness of a defence and Guilmette's recognition of his guilt, at least as to one or more of the charges, do not erase the significance of this invasion of a basic constitutional right.

This, as to Guilmette, is the opinion of a majority of the court.

The pleas of each petitioner are expunged, the judgments reversed, and the cases remanded to the Superior Court.

*So ordered.*