Filed 7/21/15  P. v. Battle CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F068190 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. F13900064) |
| MICHAEL BATTLE, | **OPINION** |
| Defendant and Appellant. | |

THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Wayne R. Ellison, Judge.

Kyle D. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Caely E. Fallini, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]      Before Poochigian, Acting P. J., Detjen, J. and Peña, J.

## INTRODUCTION

Appellant Michael Battle challenges his convictions for arson of property of another and misdemeanor tampering with a fire alarm apparatus on the grounds of instructional error. He also challenges his sentence, contending the trial court improperly punished him for opting to go to trial instead of accepting a plea. We find no merit in either of his contentions and affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

### Trial Testimony

On November 11, 2012, Nicole Navarro lived in an apartment with her two children. That morning she heard a loud knocking at her door. When Navarro did not answer, she heard a loud noise and saw Battle was inside her apartment. Battle asked Navarro who was in the apartment. Navarro ran into her children's bedroom and shut the door, but Battle pushed it open. Navarro and her children ran out of their apartment and over to her mother's nearby apartment.

Navarro stayed at her mother's apartment for no more than 30 minutes and then returned to her own apartment, accompanied by her mother. She saw Battle running down the stairs from her apartment saying, "ha, ha, ha, you bitches." Navarro ran after Battle, but he entered a waiting car and drove away.

Navarro noticed smoke coming out of her apartment and went upstairs to her apartment. The front door was damaged, the faucets were running, and the apartment was "thrashed." Her belongings were scattered about and her couch had been moved. A fire was still smoking and some of the clothes in her closet had been burned.

Navarro did not want to testify at Battle's trial and officers were sent to her residence to bring her to court. She had an on-and-off romantic relationship with Battle, during which he regularly came over to her apartment and spent the night, but they had broken up about two months before November 11, 2012.

2.

### Pretrial Interview

Navarro had given an interview to Fresno City Fire Investigator Rich Willard on November 15, 2012. Navarro told Willard she heard a knock at her door the morning of November 11, 2012, and then the door was kicked in and Battle entered the apartment. She took her children and left her apartment, staying at her mother's apartment for about 30 minutes. Battle was the only person in Navarro's apartment when she left. Navarro went back to her apartment, did not go inside, and yelled, "are you done." Battle came out onto the balcony and said he needed to talk with her; Navarro told him to hurry up and get out of her apartment.

Navarro went back to her mother's apartment and then returned to her own apartment, accompanied by her mother. Navarro saw smoke coming from her apartment. Battle then ran down the stairs from her apartment. No one else came out of her apartment.

Navarro went inside her apartment; it was in disarray and smelled of smoke. About a year before the interview, Battle had told Navarro that he was going to "light [her] ass on fire."

### Law Enforcement Investigation

On November 11, 2012, Fresno Police Officer Kevin Thakham responded to a call for service at Navarro's apartment. Thakham smelled smoke immediately upon entering the apartment. The smoke detector was on the floor and the window in Navarro's bedroom was open. The carpet in the bedroom had a burn mark on it; several items of clothing on the floor had burn marks and were "somewhat wet." Thakham made contact with Navarro, who was frightened and upset.

Fresno Fire Department Investigator Nathan Dansby investigated the fire in Navarro's apartment. There was no active fire or smoke when firefighters arrived on the scene, but there was a fire smoldering. The firefighters did not put any water on clothes

3.

that were on the floor. The smoke detector was on the floor in the bedroom and it appeared to Dansby that the smoke detector had been forcibly removed from the wall.

The only room with fire or smoke damage was the master bedroom. Dansby observed fire damage inside the closet of the master bedroom—a wooden rod for hanging clothes was charred, a shelf had smoke damage, multiple articles of clothing had burn damage, plastic hangers had melted, and part of the carpet was burned. Dansby was of the opinion the clothes had been set on fire while they were hanging inside the closet.

Dansby ruled out that the fire was caused by electrical, mechanical, or natural means. He also ruled out that an accelerant was used. Dansby opined that the fire was caused by an open flame device, like matches or a lighter; neither of these items was found at the scene.

### *Charges and Verdict*

On March 1, 2013, Battle was charged in count 1 with arson of an inhabited structure, in count 2 with arson of property of another, and in count 3 with misdemeanor tampering with a fire alarm apparatus. Battle pled not guilty.

A jury convicted Battle of counts 2 and 3, and of causing a fire that caused an inhabited structure to burn, which is a lesser included offense of count 1. Thereafter, the People dismissed count 1 in light of the jury's verdict on count 2.

The trial court sentenced Battle to a term of three years in state prison on count 2 and 301 days in the county jail on count 3, with credit for time served.

### DISCUSSION

Battle challenges his convictions on the grounds of instructional error, contending the trial court erred in refusing to instruct with bracketed language from CALCRIM No. 226 regarding a witness who admits to being untruthful. Battle challenges his sentence on the grounds the trial court improperly considered his failure to accept a plea and instead to opt for a trial as a factor in sentencing.

4.

## I.     No Instructional Error

Battle contends the trial court erred prejudicially in not instructing the jury with bracketed language from CALCRIM No. 226 that reads: "Did the witness admit to being untruthful?" "What is the witness's character for truthfulness?" "Has the witness engaged in [other] conduct that reflects on his or her believability?" We conclude the trial court did not err in omitting this language.

### *Factual Summary*

During cross-examination, Navarro responded to questions from defense counsel by saying, "I'm going to say I don't remember. Just take me to jail then. I don't care." She also responded with, "You are not my friend. You are his friend, not mine." Defense counsel then asked Navarro, "Even if you remember the answer because I'm the one who's asking it, you are going to say that you don't remember it?" Navarro responded, "Yes. I don't remember."

After this series of responses, the trial court had the jurors removed from the courtroom and admonished Navarro. The trial court instructed Navarro to "[a]nswer [the] questions truthfully and honestly. If you don't remember, you can say you don't remember. If you do, then answer the question truthfully. Agreed?" Navarro responded, "Agreed."

The jurors were then brought into the courtroom and the trial court again admonished Navarro to "answer questions as best you can. You tell the truth. If you don't remember, you can say you don't remember. If you do, then tell the truth. Agree?" Navarro responded, "I agree."

Cross-examination by defense counsel resumed. Defense counsel asked Navarro if she had told a police officer that she had broken up with Battle the week before the fire. Navarro responded that she did not recall making that statement.

5.

Later, when counsel and the trial court were discussing instructions, defense counsel requested the bracketed portion of CALCRIM No. 226 that reads "Did the witness admit to being untruthful" with respect to Navarro's testimony. The trial court indicated that had Navarro "admitted to lying either while she was testifying or on some previous occasion," then including the bracketed portion would be appropriate. The trial court, however, declined to instruct the jury with the bracketed language because in the trial court's view Navarro had been admonished twice to tell the truth and she had agreed she would do so. The trial court felt there was no evidence or indication that Navarro had in fact lied in response to any questions.

*Analysis*

Battle's contention on appeal fails for two reasons. First, although Battle contends in this appeal that three bracketed sentences from CALCRIM No. 226 should have been included in the version of the instruction given to the jury, defense counsel asked in the trial court for only one of those bracketed sentences to be included. Specifically, defense counsel asked for the sentence "Did the witness admit to being untruthful" to be included in the instruction to the jury. Since Battle did not request in the trial court that CALCRIM No. 226 include the other two bracketed sentences when given to the jury, he has forfeited this aspect of his contention on appeal. (*People v. Guerra* (2006) 37 Cal.4th 1067, 1134.)

Second, the trial court was correct in declining to include in the jury instructions the sentence "Did the witness admit to being untruthful." In contrast to the cases cited by Battle in support of his contention that this sentence should have been included, Navarro did not admit to being untruthful in her testimony and there was no character evidence introduced to establish that she had a reputation for being untruthful.

Admittedly, at trial Navarro stated she would start responding to defense counsel's questions with a claim she could not remember, even if she could. After this remark, however, the trial court twice admonished Navarro to testify fully and truthfully, and

6.

Navarro twice agreed to do so. While Battle contends that Navarro responded 33 times in cross-examination that she could not remember and claims this is evidence she was lying in response to defense questions, she also stated this response 19 times in response to questions from the People.

Regardless, any improper omission of jury instructions is evaluated under the standard set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836. (*People v. Larsen* (2012) 205 Cal.App.4th 810, 830.) The jury was instructed that in evaluating witness credibility, it could consider anything that tends to prove or disprove the accuracy of the testimony, a witness's behavior and attitude while testifying, prior inconsistent statements, and a witness's ability to remember. The instructions, when considered as a whole, properly guided the jury's evaluation of a witness's credibility and testimony. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1144.)

## II. Battle Properly Was Sentenced

Battle contends the trial court erred in sentencing him because it improperly considered as a factor his decision to stand trial instead of accept a plea. His contention lacks merit.

### *Factual Summary*

The People initially offered Battle a stipulated three-year prison term in exchange for a plea to count 2; Battle rejected the offer. Before trial commenced, the trial court told Battle that there was no current offer from the People. The trial court indicated it had told defense counsel that "[Battle] would have to plead to arson of an inhabited structure," and that the trial court would impose the mitigated term of three years "with all of [Battle's] cases included." The trial court stated, "that's the only offer that you have before you, and told Battle to think about it and provide a decision the next morning. Battle declined to plead.

After the conclusion of the trial, the probation department prepared a report recommending Battle be sentenced to a term of three years in prison for the instant case,

plus a consecutive eight-month term for his conviction in another case for violating Vehicle Code section 2800.2, subdivision (a). The probation department found no factors in mitigation, but listed five aggravating factors. Battle was statutorily ineligible for probation.

In sentencing Battle, the trial court stated, "How it gets to court and how it gets to trial is of some importance to me." Subsequently, the trial court stated, "You get to go to trial, sir, and I told you this—I'm not going to punish you for making the decision to go to trial, but you do live with the consequences."

Before articulating the sentence to be imposed, the trial court noted that Battle had a serious criminal history, detailed over three pages of the probation report, which the trial court described as "relentless." The trial court also noted Battle previously was "involved with setting fires at school or something like that." The trial court went on to state, "I have to protect the community, sir. The behavior you engaged in in both of these two cases puts the community at risk. Driving [in] a high speed chase with the cops into somebody's house [is] pretty serious stuff."

Ultimately, the trial court imposed a sentence in accordance with the recommendation of the probation department: the aggravated term of three years for the section 451, subdivision (d) conviction, a felony, and a consecutive term of one-third the midterm, or eight months, for violating Vehicle Code section 2800.2, subdivision (a), a felony. As for the misdemeanor convictions in both cases, the trial court stated those would be "credit for time served." The trial court also found that based upon the current offenses, Battle was in violation of his probation that had been granted in yet another case. The time to be served as a result of the violation and revocation of probation was to be served concurrently.

*Analysis*

It is a violation of due process to penalize a defendant for exercising his or her right to a trial. (*In re Lewallen* (1979) 23 Cal.3d 274, 278 (*Lewallen*).) A trial court

8.

"'may not treat a defendant more leniently because he foregoes his right to trial or more harshly because he exercises that right.'" (*People v. Clancey* (2013) 56 Cal.4th 562, 575.) A defendant must make "'some showing, properly before the appellate court, that the higher sentence was imposed as punishment for exercise of the right.'" (*People v. Ghebretensae* (2013) 222 Cal.App.4th 741, 762.)

Battle opines that the trial court was displeased that he exercised his right to a trial, believed he made a bad decision in exercising his right to a trial, and wanted to avoid the inconvenience of a trial. This is not borne out by the record. Prior to trial, the trial court stated, "Mr. Battle, I want you to understand this conversation I'm about to have with you—you have an absolute right to a jury trial. I'm not interested in talking you out of that, sir. That's the truth. If I'm not doing your trial, Mr. Battle, I'll be doing somebody else's, so it's okay by me if you go to trial." The trial court's record comments belie Battle's subsequent attempt to misconstrue remarks made by the trial court at sentencing.

Battle has failed to demonstrate that his sentence was imposed as punishment for exercising his right to a trial. The probation report recommended the aggravated term for the section 451, subdivision (d) offense, and the trial court specifically referenced an appropriate sentencing factor—Battle's extensive criminal history—in imposing the aggravated term of three years. (Cal. Rules of Court, rule 4.421(b).) A single factor in aggravation is sufficient to impose the upper term. (*People v. Black* (2007) 41 Cal.4th 799, 815.)

A trial may reveal more adverse information about a defendant than was known at the time a plea was offered, which adverse information would warrant an increased sentence from what was indicated in a plea offer. (*Lewallen, supra,* 23 Cal.3d at p. 281.) Here, unlike *Lewallen,* the trial court's sentence was consistent with the probation department's recommendation and was the same term—three years—that the trial court indicated it would impose if Battle had pled to the count 1 offense.

## DISPOSITION

The judgment is affirmed.