Filed 12/2/21  P. v. Harris CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JAMES HARRIS, JR,<br><br>    Defendant and Appellant. | B312318<br><br>(Los Angeles County<br>Super. Ct. No. ZM020470) |

_____

APPEAL from an order of the Superior Court of Los Angeles County, Robert S. Harrison, Judge.  Affirmed.

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Amanda V. Lopez and Michael Katz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Following a bench trial, the trial court extended James Harris, Jr.'s commitment for criminal insanity for two years under Penal Code section 1026.5, subdivision (b). Harris' sole claim on appeal is that the trial court improperly induced his jury trial waiver when it informed him that jury trials were indefinitely delayed due to the COVID-19 pandemic, but that the court could schedule a bench trial within a few weeks.

Because the trial court's advisements were neither coercive nor otherwise defective, we affirm the recommitment order.

## FACTUAL BACKGROUND

In 2012, Harris was committed to a California state hospital pursuant to Penal Code section 1026, after being found not guilty by reason of insanity of several violent offenses. Since then, his state hospital commitment period has been extended numerous times, with the most recent petition having been filed on February 2, 2021, and sustained by the court on April 20, 2021, following a bench trial

At the April 20, 2021 bench trial, the court heard testimony from two psychological evaluators, who both opined that continued hospitalization was appropriate due to Harris' continuing instability and the potential risk of violence. Harris testified on his own behalf, stating he was on various psychiatric medications, believed some were helpful, and that he wanted to move to a board and care facility. He denied hearing voices and testified his mood is presently stable. Following the testimony, the trial court ordered Harris recommitted for a two-year term through April 19, 2023.

## DISCUSSION

Harris contends the trial court improperly induced his jury trial waiver by highlighting the scheduling advantages of

choosing a bench trial over a jury trial. As explained below, we find no merit in this contention.

## A.    Relevant Proceedings

At a March 16, 2021 pretrial conference, the prosecutor advised the trial court that "[w]e need to set a trial date," and that the maximum date was April 19, 2021.[1]  The court then asked Harris' counsel if he was available on April 6, 2021, and, after counsel replied in the affirmative, the court asked counsel if it was going to be a court or a jury trial.

The prosecutor responded that it was going to be a court trial, but stated to Harris' counsel, "[w]e don't have a waiver, though."  Thereafter, a colloquy between the trial court and Harris ensued, as follows:

"The Court:  . . .  So, Mr. Harris, we're setting your case for a court trial today for April 6th at 1:30 p.m.  But you need to know that you have a right to have your case tried to a jury of 12 members of the community.  And—however, if you choose that option in lieu of having a court trial, we probably won't be able to give you a trial date until sometime in—When, [the court clerk]?

"The Clerk:  For a jury trial?

"The Court:  Yeah.  For a jury trial.

"The Clerk:  I have no idea.  I don't know when they're setting those.

"The Court:  Yeah.  Because of COVID, sir, I don't know if we're setting jury trials in this courthouse.  So your case would be in a state of limbo for a while if you were to choose a jury trial.  So I just want to make sure you understand that option.  If you

---

[1] The prosecutor's reference to the maximum date of April 19, 2021, referred to when Harris' present commitment term was set to expire.

want to have your case heard on April 6th and decided by a judge—in this case it will probably be Judge Harrison—I need you to agree to give up your right to a trial by a jury. Do you want to give up your right to a jury trial and have your trial on April 6th before Judge Harrison or whatever other judge is available?

"[Harris]: Yes.

"The Court: Okay. All right. The court finds the defendant has knowingly waived his right to a jury trial. This matter is set for a court trial on April 6th."

## B.     Governing Legal Principles

Under Penal Code section 1026.5, a defendant in an extended commitment proceeding has a right to jury trial, and must be advised of that right by the trial court upon the filing of an extended commitment petition. Penal Code section 1026.5, subdivision (b)(3), specifically provides that "[w]hen the petition is filed, the court shall advise the person named in the petition of the right to be represented by an attorney and of the right to a jury trial," while section 1026.5, subdivision (b)(4) provides that "[t]he trial shall be by jury unless waived by both the person and the prosecuting attorney."

In *People v. Tran* (2015) 61 Cal.4th 1160, our high court interpreted the above sections to hold that the trial court must personally advise the defendant in a Penal Code section 1026.5 proceeding of his or her right to a jury trial and must elicit any waiver of that right on the record—unless there is substantial evidence that the defendant lacks the capacity to make a

4

knowing and voluntary waiver.[2] (*Tran, supra*, at pp. 1166-1168.)[3]

A waiver is *knowing* and *intelligent* when it is made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it, and " 'voluntary' " when it is " 'the product of a free and deliberate choice rather than intimidation, coercion, or deception.' " (*Colorado v. Spring* (1987) 479 U.S. 564, 573 [107 S.Ct. 851, 93 L.Ed.2d 954]; *People v. Collins* (2001) 26 Cal.4th 297, 305 (*Collins*).)

" 'No particular language is necessary to waive a jury trial so long as the words employed disclose in their ordinary, common sense, fair meaning and context an intention to be tried by the court sitting without a jury.' " (*People v. Doyle* (2016) 19 Cal.App.5th 946, 952; cf. *People v. Sivongxxay* (2017) 3 Cal.5th 151, 168 [" '[t]he United States Supreme Court has never held that a defendant, when waiving the right to a jury,

---

[2] In the latter instance, control of the waiver decision shifts to counsel. (*People v. Tran, supra*, 61 Cal.4th at p. 1167.)

[3] In *Tran*, our high court noted that the statutory language regarding jury trial waivers under Penal Code section 1026.5 is virtually identical to the language addressing that right in the context of Mentally Disordered Offenders (MDO) cases and, accordingly, applied the same interpretation as in its MDO companion case, *People v. Blackburn* (2015) 61 Cal.4th 1113. (*People v. Tran, supra*, 61 Cal.4th at pp. 1167-1168; *Blackburn, supra*, at pp 1124-1137.) In light of these statutory protections, the *Blackburn* court did not decide whether the constitutional right to a jury trial afforded to criminal defendants also applies to commitment extension proceedings. (*Blackburn, supra*, at p. 1120.)

constitutionally is entitled to be canvassed by the trial court, let alone to require a specifically formulated canvass' " "and [the California Supreme Court] ha[s] never insisted that a jury waiver colloquy invariably must discuss juror impartiality, the unanimity requirement, or both for an ensuing waiver to be knowing and intelligent"].)

## C. Harris' Jury Trial Waiver Was Neither Coerced nor Otherwise Defective

Harris acknowledges the trial court personally elicited his waiver on the record and further concedes that he is "not contend[ing] that the admonitions regarding the right to a jury trial were insufficient."[4]  Instead, Harris contends that his waiver was involuntary because the trial court "secured [Harris'] acquiescence by emphasizing the disadvantages of a jury trial." Specifically, Harris claims that the trial court's comments "reflected that [Harris] would be punished for exercising his right to a jury trial by being unable to secure that right for the foreseeable future, while receiving a benefit, i.e.[,] a speedy court trial, for waiving that right."  In so arguing, Harris relies heavily on *Collins*, *supra*, 26 Cal.4th 297.  *Collins* is inapposite.

In *Collins*, our high court reversed a conviction where the trial court informed a criminal defendant that he would receive " 'some benefit' " if he waived his right to a jury trial. (*Collins*, *supra*, 26 Cal.4th at p. 302, italics omitted.)  Although the trial court could not yet specify the benefit, the court assured the defendant that his willingness to waive jury trial—and " 'not tak[e] up two weeks' time to try the case' "—would have " 'some effect *on the court*' " and expressly stated to the defendant " 'that

---

[4] Nor does Harris contend that he lacked the capacity to enter into a knowing and voluntary waiver.

by waiving jury, you *are* getting some benefit.' "[5]  (*Ibid.*, italics omitted.)

On review, our high court observed that appellate courts in California and elsewhere " 'have vacated sentences when the trial court has apparently used its sentencing power, either more severely or more leniently than the norm, in order to expedite the resolution of criminal matters' " (*Collins*, *supra*, 26 Cal.4th at p. 307, quoting *In re Lewallen* (1979) 23 Cal.3d 274, 279), and that "[t]he impropriety of a trial court's explicit promise of more lenient treatment in sentencing if the defendant waives trial by jury is comparable to the impropriety of harsher treatment imposed because of the defendant's having invoked his or her right to trial by jury." (*Collins*, *supra*, at p. 307.)

Our high court explained that, although the trial court had properly advised the defendant about the right that he was waiving, it also had "announc[ed] its intention to bestow some form of benefit in exchange for [the] defendant's waiver" and thus "acted in a manner that was at odds with its judicial obligation to remain neutral and detached in evaluating the voluntariness of the waiver." (*Collins*, *supra*, 26 Cal.4th at p. 309.)  This "form of the trial court's negotiation with [the] defendant presented a 'substantial danger of unintentional coercion,' " and effectively

---

[5] The defendant, who was facing a maximum potential sentence of 41 years in state prison, ultimately received a total term of 24 years in prison.  (*Collins*, *supra*, 26 Cal.4th at p. 303.)  At sentencing, the defense counsel had suggested that the "defendant's waiver had benefited the minor victim by reducing her 'exposure to presentation of traumatic events.' " (*Id.* at p. 315 (conc. opn. of Brown, J.).)

resulted in an offer by the trial court "to reward [the] defendant for refraining from the exercise of a constitutional right."[6] (*Ibid.*)

Unlike in *Collins*, the trial court here did not engage in "negotiation" by offering to "*bestow* some form of benefit in exchange for [Harris'] waiver." (*Collins*, *supra*, 26 Cal.4th at p. 309, italics added.) The trial court merely apprised Harris of a circumstance that was admittedly beyond the court's own control—i.e., the halting or delay of trials due to the pandemic.[7] Nothing in the court's statements indicate that it strayed from its "judicial obligation to remain neutral and detached" (*ibid.*) or otherwise engaged in the type of coercion defined and explained in *Collins*.

Harris also points out that prior to taking his waiver, the parties and the court discussed potential bench trial dates which, according to Harris, "reflected . . . an understanding, and an assumption that [Harris] would waive his right to a jury trial" and deprived him of "the opportunity to make a reasoned decision whether to seek a court or a jury trial." We disagree.

The record demonstrates Harris was personally informed of his right to a jury trial, and that he clearly and unequivocally waived that right. Harris' assertions that this process was "at

---

[6] The court pointed out that, while the prosecutor and a defendant may negotiate a plea of guilty or nolo contendere, which involves the relinquishment of the constitutional rights attending a trial, the trial court may not engage in negotiations in order to secure a jury trial waiver. (*Collins*, *supra*, 26 Cal.4th at p. 309 & fn. 4.)

[7] Harris does not challenge the truth or accuracy of the trial court's comments about the pandemic's impact on jury trials, and neither he nor his trial counsel sought further clarification of the court's jury trial scheduling procedures.

best a formality" or "at worst a sham" are speculation and refuted by the record.  In multiple previous commitment hearings, Harris requested a bench trial and waived his right to a jury trial after being advised of his rights—including advisements more extensive than those provided here.  Harris was therefore well aware of his right to proceed to a jury trial and his ability to exercise that right.  (Cf. *People v. Farwell* (2018) 5 Cal.5th 295, 302-307 [whether a waiver is knowing and voluntary must be evaluated under the "totality of the circumstances," including prior experience with criminal justice system].)

In sum, Harris has failed to demonstrate that his jury trial waiver was involuntary, or otherwise defective.  Accordingly, we affirm the trial court's recommitment order.

## DISPOSITION

The recommitment order is affirmed.
NOT TO BE PUBLISHED


CRANDALL, J.[*]

We concur:



ROTHSCHILD, P. J.



CHANEY, J.

---

[*] Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9