Filed 7/17/14  P. v. Joseph CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br> v.<br><br> JOHN STEPHEN JOSEPH,<br><br>  Defendant and Appellant. | B246703<br><br> (Los Angeles County<br> Super. Ct. No. SA081138) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Kathryn A. Solorzano, Judge.  Affirmed.

Mark J. Shusted, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Shawn McGahey Webb and Taylor Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant John Stephen Joseph (defendant) appeals from his arson conviction seeking review of the record of the in camera *Pitchess* document review.[1] Defendant also contends that at sentencing the trial court committed "*Lewallen* error"[2] by punishing him with a denial of probation due to his rejection of a pretrial plea offer. Finding no error in the *Pitchess* review and no merit to defendant's remaining contentions, we affirm the judgment.

## BACKGROUND

### Procedural history

Defendant was charged with one count of arson in violation of Penal Code section 451, subdivision (d).[3] A jury convicted him as charged. On January 29, 2013, the trial court denied probation and sentenced defendant to the low term of 16 months in prison. Defendant was given 442 days of presentence custody credit, comprised of 221 actual days in custody, plus 221 conduct credits. The trial court ordered defendant to pay mandatory fines and fees, to pay restitution, and to provide a DNA sample and print impressions. Defendant filed a timely notice of appeal from the judgment.

### Prosecution evidence

On the evening of June 23, 2012, Kassra Azimi was trying to sleep when he heard someone yelling outside. Azimi looked out the window, saw a person on top of an abandoned city building across the street yelling "I didn't do it" and something about Jesus and not being a racist. When Azimi went outside he saw smoke, firelight, and a man moving about on the roof between some branches and the firelight. The man appeared to be either throwing the branches into the fire or using them to fan the fire. Azimi was not certain. After five or 10 minutes, Azimi's roommate Kevin Thornton came home, saw the fire, and called 911. Thornton saw smoke, fire, and a man near the

---

[1] See *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*); Penal Code sections 832.7 and 832.8; Evidence Code sections 1043 through 1045.

[2] See *In re Lewallen* (1979) 23 Cal.3d 274 (*Lewallen*).

[3] All further statutory references are to the Penal Code, unless otherwise indicated.

fire who appeared to be either throwing palm fronds on the fire or using them to fan the fire.

Los Angeles Police Officer Joe Cruz responded to the 911 call. He saw defendant on the roof adding material to the fire which caused the flames to increase. Defendant was yelling something Officer Cruz could not make out. Defendant did not seem frightened. Officer Cruz yelled to defendant to move to the other side of the roof and keep his hands in sight. The officer saw no one else on the roof and did not see anyone fleeing the scene. When Officer Cruz reached defendant and asked why he was on the roof, defendant replied, "I started the fire," adding that he had used fire and papers. Defendant also said something to the effect that someone had chased him up there, he had climbed the tree, and he was scared.

Los Angeles Fire Captain Harold Dwayne Golden testified that the fire could not have been accidental or naturally caused, as there were no electrical hazards, lightening strikes, high-tension wires, or chemicals that could cause spontaneous combustion. He also observed that the atmospheric humidity was too great for a discarded cigarette to have started the fire.

**Defense evidence**

Defendant testified that he went to the roof because he felt he was being pursued by someone who wanted to do him harm. Since he was scared to death and could not find a safe way down, he began yelling in order to draw the attention of area residents, hoping they would come out and scare off the attackers. He yelled, "Help. My name is John Joseph. I love Jesus Christ. I don't have any money. I haven't done anything wrong. I'm not a racist. I'm a child of God and I love all of God's children." Defendant heard someone charge into the bushes and start climbing the tree he had used to get to the roof. He decided to face down his assailants when he saw fire on the other side of a retaining wall. Defendant then picked up a palm frond and tried to either suffocate the flames with it or to disperse the burning material. When the frond caught fire, he dropped it. Defendant denied starting the fire.

On cross-examination defendant explained he was homeless and was in the area looking for a place to sleep when he saw a group of four or five people. He could not describe the people because it was dark and they were at a distance. Defendant said they had a sinister look and gave him the impression they were following him. They crept toward him, moving in a sneaky, threatening manner, and it "just felt like they were coming after [him]." Defendant guessed that someone followed him to the roof and lit the fire while he was looking for an alternate way down. Defendant explained that there was a lot of foliage in the area, so he did not see anyone climb onto the roof.

Defendant denied telling Officer Cruz that he had started the fire and claimed that the officer had lied. Defendant said only that he was chased up to the roof and was afraid for his life, once in response to the officer's questions on the roof and again when Officer Cruz questioned him in the patrol car about what had happened.

**Rebuttal**

Officer Cruz testified that after defendant was handcuffed and placed into the police car, he was asked for identifying information, but not questioned about what happened on the roof.

**Sentencing hearing**

The trial court began the sentencing hearing by informing defendant that his conviction was a "strike" and that any future felony conviction would result in doubling his prison term. The court indicated that it had reviewed the probation report and then asked, "[J]ust as a matter of curiosity, it's not going to have any impact on what I do here, but what was the offer going in?" Defense counsel replied, "It was 90 day diagnostic and 16 months."[4] The court then asked the prosecutor what sentence he was seeking. The prosecutor asked for the middle term or two years. The court read section 1170, subdivision (b), which affords discretion to the trial court to select whichever term

---

**4**     Counsel was apparently referring to section 1203.03, which permits the sentencing court to order the Department of Corrections to provide diagnostic and treatment services for up to 90 days prior to sentencing, and then to make recommendations to the court concerning the disposition of the defendant's case.

4

will best serve the interest of justice. Defense counsel asked the court to consider a 90-day diagnostic study, as defendant's criminal history consisted of three misdemeanor convictions of driving while intoxicated and with a continuance, she would be able to present sufficient mitigating evidence to justify a diagnostic study.

The judge noted that "[a] diagnostic would have been a good way to go in this case," and went on to say, "Firstly, this case was sent to me. I was told that there would be no disposition because the defendant had rejected the offer in Department F and in Department E. So I just tried this case not even knowing -- I didn't read the probation report, frankly. Usually, I do, but I didn't in this case. I tried just to keep a very open mind." Then, after reviewing defendant's criminal history on the record, the trial court made several observations and noted that defendant had failed to successfully complete his prior probation. Defense counsel pointed out that it had been misdemeanor probation and defendant had never had the opportunity to be on formal felony probation. After hearing further argument on the point by defense counsel, the judge replied, "Okay. I have to say, perhaps he would have been a candidate for probation had he admitted this crime. We can't get around the fact that an arson is a serious felony, period, end of story. It is."[5]

The court noted the potential for loss of life and more severe property damage, and explained that defendant "did not admit the offense. He testified in this case. I heard the testimony [and] did not find it credible. The jury rejected that testimony. They were out, I think, less than an hour." The court also observed that the "fire did not start spontaneously. And if it did start accidentally, that is not the statement that defendant made to the police, and it was never stated here in this court under oath." The court concluded: "So probation for a crime like this which creates the potential for serious harm and property loss at a greater value than that was sustained in this case, this is a serious felony case. And he's . . . had the benefit of misdemeanor probation. Summary

---

[5]     See section 1192.7, subdivision (c)(14), which defines arson as a serious felony.

probation, albeit, buts has continuously been convicted of the same offense . . . three times. And one of those convictions while he was still on probation."

The court then went on to analyze the suggested criteria affecting probation set forth in California Rules of Court, rule 4.414. Citing factor (a)(5), the court stated that the photographs of the damaged building indicated a degree of monetary loss to the City and the taxpayers to repair the building; citing factor (a)(6), the court noted that defendant had not played a passive role in the crime, but had started the fire; and citing (a)(8), the court did not find indications of criminal sophistication or professionalism, but noted that the fire was intentionally, not accidentally started.

Turning to factors set forth in California Rules of Court, rule 4.414(b) relating to the defendant, the court noted that defendant's criminal history showed an alcohol dependency, and the court invited argument on that factor. The court spoke of defendant's inability to comply with reasonable terms of probation. Observing that defendant had never expressed remorse, the court said, "Instead, he came up with the story he came up with which was not persuasive." Finally, the court found a likelihood that defendant would be a danger to others if not imprisoned. The court noted that the flames grew as high as 15 feet, placed Officer Cruz and the firefighters in danger, and as common sense would dictate that such a fire could spread to the entire building and to nearby structures, defendant placed homes and citizens in danger.

After the court stated that probation would be denied based upon all the foregoing reasons, defense counsel requested a three-week continuance of sentencing to allow time to submit evidence of mitigation. However, counsel withdrew the request after the court indicated its intended sentence was the low term of 16 months. Following additional argument and discussion defense counsel agreed to immediate sentencing. Defendant was then sentenced to 16 months in prison.

## DISCUSSION

### I. *Pitchess* review

Prior to trial, defendant filed a *Pitchess* discovery motion requesting all material relating to a broad range of misconduct that might be contained in Officer Cruz's

6

personnel file. The trial court granted the motion only as to evidence of false reports and false testimony, conducted an in camera review of personnel records and found no discoverable complaints. Defendant requests that we review the sealed transcript of the *Pitchess* hearing for error.

The trial court's determination is reviewed for an abuse of discretion. (*People v. Jackson* (1996) 13 Cal.4th 1164, 1220-1221.) We have considered the sealed record of the in camera proceedings and although the trial court did not keep a copy of the personnel records, we find the transcript sufficiently detailed to review the trial court's discretion, as the trial court orally described for the record each document produced. (See *People v. Mooc* (2001) 26 Cal.4th 1216, 1228-1229.) Upon review of the sealed transcript, we conclude that the trial court properly exercised its discretion in determining that no documents existed within the scope of the *Pitchess* motion as granted by the court, and that no documents or information should be disclosed to the defense as a result of the review.

## II. Denial of probation

Defendant contends that the trial court denied probation in this case to punish him for not accepting the pretrial plea bargain offer.

A criminal defendant may not be punished for exercising his constitutional right to a trial; thus, a court "'may not treat a defendant more leniently because he foregoes his right to trial or more harshly because he exercises that right.' [Citation.]" (*Lewallen*, *supra*, 23 Cal.3d at pp. 278-279.) A sentence must be reversed when the circumstances reveal that the court imposed a more severe sentence in consideration of the defendant's decision to go to trial. (*Id*. at pp. 279-281.)

Respondent contends that defendant's failure to object on the ground of *Lewallen* error resulted in the forfeiture of the issue. Respondent relies on *People v. Williams* (1998) 61 Cal.App.4th 649 (*Williams*), which held that the defendant's failure to object to perceived vindictive sentencing and to request reasons for the court's enhanced sentencing choices resulted in a forfeiture of the issue on appeal. (*Id*. at pp. 654-655.)

Defendant contends that *Williams* should not be extended to *Lewallen* error.[6] We need not rely on *Williams* or reach defendant's reasoning, as the trial court did not fail to provide reasons for its sentencing choices and for denying probation, and defense counsel did not simply fail to object on *Lewallen* grounds. Rather, counsel expressly acquiesced to immediate sentencing without the diagnostic study which might have justified probation.[7]

Defendant contends that there can be no forfeiture of the issue because the sentence was unauthorized. To the extent defense counsel's acquiescence in foregoing a diagnostic study could be considered invited error, it would not result in the forfeiture of an unauthorized sentence. (See *In re Andrews* (1976) 18 Cal.3d 208, 212.) An unauthorized sentence is one that "could not lawfully be imposed under any circumstance in the particular case." (*People v. Scott* (1994) 9 Cal.4th 331, 354.) Unauthorized sentences present "'pure questions of law' [which are] '"clear and correctable" independent of any factual issues presented by the record at sentencing.' [Citation.]" (*People v. Smith* (2001) 24 Cal.4th 849, 852.) Here, as defendant contends that the punitive motive of the trial court can be inferred from the court's comments at sentencing, the issue turns on the particular circumstances of this case, thus dependent on factual issues presented by the record.

Regardless, we have reviewed the court's comments and find no merit to defendant's arguments. First we reject defendant's suggestion that it is respondent's burden to demonstrate that the sentence was not improperly motivated. A violation of the similar *Pearce* rule would give rise to a presumption of vindictiveness. (See *North*

---

[6] *Williams* involved vindictive sentencing in violation of the "*Pearce* rule," which bars imposing a greater sentence in retaliation for a successful appeal. (See *North Carolina v. Pearce* (1969) 395 U.S. 711, 723.)

[7] Although the court was willing to consider a diagnostic study, counsel declined, stating: "I think that it would not benefit my client to continue at this point. It doesn't seem that the court is even close to being persuaded toward probation, and it seems that a continuation of sentencing would . . . not benefit to my client. And so I am hoping at this time that the court would impose the 16 months it originally had thought was fair."

*Carolina v. Pearce, supra*, 395 U.S. at p. 725 & fn. 7, ante.)  However in the sort of case that does not present a "'reasonable likelihood,' [citation], that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority . . . , the burden remains upon the defendant to prove actual vindictiveness [citation]."  (*Alabama v. Smith* (1989) 490 U.S. 794, 799-800.)  For example, "when a greater penalty is imposed after trial than was imposed after a prior guilty plea, the increase in sentence is not more likely than *not* attributable to the vindictiveness on the part of the sentencing judge[,] [e]ven when the same judge imposes both sentences."  (*Id.* at p. 801, italics added.)  This is because trial may provide the judge with a fuller appreciation of the nature and extent of the crimes charged, as well as defendant's moral character and suitability for rehabilitation, possibly eliminating factors that may have indicated leniency prior to trial; and the judge may also consider his or her perception of the truthfulness of a defendant who testified on his own behalf at trial.  (*Ibid.*)

The same reasoning applies to sentencing after a defendant declines a pretrial plea offer and goes to trial, as "[l]egitimate facts may come to the court's attention . . . through the personal observations of the judge during trial [citation]."  (*Lewallen, supra*, 23 Cal.3d at p. 281.)  Thus, it is defendant's burden to show that the trial court imposed the more severe sentence to penalize him for going to trial.  (See *People v. Szeto* (1981) 29 Cal.3d 20, 34-35 (*Szeto*).)

We reject any suggestion that raising a speculative inference of improper motive would be a sufficient showing.  Defendant argues that reversal is required if the sentencing court made at least one statement that would cause a disinterested person to wonder whether the judge subconsciously allowed the defendant's rejection of a plea offer to affect the sentence.  On the contrary, reversal is required only when the sentencing judge's statements *reasonably* give rise to the inference that the more severe sentence was meant to penalize the defendant for exercising his constitutional right to go to trial.  (*Szeto, supra*, 29 Cal.3d at p. 35.)

9

Defendant also suggests that he need not show that the denial of probation was more severe than offered.**8** Defendant concedes that the same or a lesser sentence would give rise to an inference that the court was *not* vindictive, but argues that neither *Collins* nor *Lewallen* required judicial vindictiveness as a prerequisite to relief. He concludes that the question should be merely whether the judge's subjective punitive motivation *affected* the sentence. We discern no distinction between "vindictive" and "punitive" to describe treating a defendant "more harshly" because he exercises his right to a jury trial. (*Lewallen, supra*, 23 Cal.3d at pp. 278-279.) And as nothing in *Lewallen* or *Collins* compels or justifies construing "more harshly" as the same or less harshly than the pretrial offer, or simply different from the pretrial offer, we decline to do so.

The only description of the pretrial offer in the record is defense counsel's statement during the sentencing hearing that the offer was a "90 day diagnostic and 16 months." The grant or denial of probation, even after a bargained for diagnostic study under section 1203.03, always remains within the discretion of the sentencing court. (*People v. Tang* (1997) 54 Cal.App.4th 669, 683.) "[A] trial court's discretion in imposing sentence is in no way limited by the terms of any negotiated pleas or sentences offered the defendant by the prosecution . . . . When granting probation . . . , courts have broad discretion to impose conditions directed toward rehabilitation of the offender and safety of the public. [Citation.]" (*Lewallen, supra*, 23 Cal.3d at p. 281.) Even a favorable recommendation by the Department of Corrections does not guarantee treatment or probation, but "is simply one factor among others, both factual and legal, to be considered by the judge in pronouncing sentence." (*People v. Tang, supra*, at p. 683.)

---

**8**    In response to respondent's argument that the sentence was not in fact more severe than the prosecutor's pretrial offer, defendant characterizes the contention as a harmless error analysis. Defendant then points out that *Lewallen*-type error is structural, and thus not amendable to a harmless error analysis. (See *People v. Collins* (2001) 26 Cal.4th 297, 312 (*Collins*) [promise of leniency for jury trial waiver].) Respondent did not argue harmless error, but correctly pointed out that defendant had not made the required showing of a more severe sentence or an intent to penalize defendant for exercising his right to a jury trial.

Thus, as the pretrial plea offer did not include a promise of probation, defendant's sentence was not more severe or harsh than such offer, and did not give rise to an inference of punitive or vindictive motive. Further, the trial court did not deny defendant the opportunity to have the diagnostic study that might have led to a grant of probation. The court was willing to grant defense counsel's request for a three-week continuance of sentencing to allow time to submit mitigating evidence, but counsel withdrew the request and agreed to immediate sentencing. Defendant then received the same 16-month term as offered prior to trial.

Even if the sentence could be considered more severe than the pretrial offer, we find no merit in defendant's argument that several of the trial judge's comments demonstrate an intent to punish him for going to trial. Defendant has selected a few comments from the lengthy sentencing hearing: the inquiry about the pretrial offer; the court's opinion that "[a] diagnostic would have been a good way to go in this case"; and the comment, "Okay. I have to say, perhaps he would have been a candidate for probation had he admitted this crime. We can't get around the fact that an arson is a serious felony, period, end of story. It is."

Defendant argues that the selected comments are comparable to those in *Lewallen*, where the California Supreme Court found that the following two statements by the trial court demonstrated "that sentencing was influenced by improper considerations. First, in response to defense counsel's suggestion that placing defendant on informal probation would suffice, the trial judge responded, 'You mean whether or not there's a disposition or not after a jury trial?' Second, after sentencing the trial judge stated, 'I think I want to emphasize there's no reason in having the District Attorney attempt to negotiate matters if after the defendant refuses a negotiation he gets the same sentence as if he had accepted the negotiation. It is just a waste of everybody's time, and what's he got to lose. And as far as I'm concerned, if a defendant wants a jury trial and he's convicted, he's not going to be penalized with that, but on the other hand he's not going to have the consideration he would have had if there was a plea.'" (*Lewallen*, *supra*, 23 Cal.3d at p. 277.)

11

Defendant's comparison with the *Lewallen* comments fails, as there is no similarity to the comments made by the trial court in this case. In addition, we agree with respondent that defendant has taken the comments out of context, and when viewed as part of the whole sentencing record it is clear that they did not relate in any way to defendant's decision to go to trial. Asking what the offer had been and the prosecution's current recommendation clearly referred to the length of any sentence to be imposed. Defense counsel's request for a 90-day diagnostic changed the course of the discussion to the issue of probation. After observing that a diagnostic would have been a "good way to go," the court summarized portions of the probation report on the record, observed that defendant had not successfully completed probation, heard defense counsel's argument regarding formal probation, and then made the comment that defendant might "have been a candidate for probation had he admitted this crime." Thus, far from referring to defendant's rejection of a plea bargain, the court made the remaining comments as part of a discussion of the factors affecting probation, including those listed in California Rules of Court, rule 4.414, which the court expressly cited and discussed.[9]

For example, it is apparent that the comment that defendant "would have been a candidate for probation had he admitted this crime" was a reference to defendant's false testimony at trial, and not a reference to defendant's failure to plead guilty or no contest. The court explained that defendant "did not admit the offense. He testified in this case. I heard the testimony [and] did not find it credible." The court also observed that "the statement that defendant made to the police . . . was never stated here in this court under oath." A defendant's willingness to give false testimony may reflect on his character and amenability to rehabilitation, and is thus properly considered in sentencing. (*People v. Howard* (1993) 17 Cal.App.4th 999, 1002-1005; *Alabama v. Smith, supra*, 490 U.S. at p. 801.)

---

[9] Defendant contends that the comment that "arson is a serious felony, period, end of story" denotes a closed mind and a determination that the crime itself disqualified defendant from probation, regardless of other factors. Even if we agreed with defendant's interpretation, such a belief in the importance of a single factor by no means implies an intent to punish defendant with a sentence more severe than the plea offer.

The court also noted that defendant's untruthfulness indicated a lack of remorse, explaining "Instead, he came up with the story he came up with which was not persuasive." A defendant's lack of remorse is an appropriate probation factor to consider where, as here, the evidence of guilt was overwhelming. (*People v. Leung* (1992) 5 Cal.App.4th 482, 507.) At trial defendant denied that he started the fire and claimed that he tried to extinguish it with palm fronds. At the scene however, defendant admitted to Officer Cruz that he started the fire; the officer saw him feeding the fire; and other witnesses saw defendant either adding palm fronds or fanning the fire with them.

Defendant claims that the evidence was not overwhelming because his version of the events was corroborated by Officer Cruz's testimony that defendant said he had been chased onto to the roof and was scared. We disagree. Instead this corroborated defendant's asserted excuse for being on the roof.

In sum, after considering many appropriate factors the court concluded that defendant's conduct indicated he was a serious danger to society unless he served a prison term. When a sentencing court states ample reasons for its choices we do not assume that the reasons were intended to "mask a hidden unconstitutional agenda." (*People v. Huston* (1989) 210 Cal.App.3d 192, 223, citing *Szeto, supra*, 29 Cal.3d at p. 35.) As the trial court's comments reflect no more than a consideration of many factors relating to whether probation should be granted, defendant has failed to establish a reasonable inference of punishment for having a trial. (See *People v. Ghebretensae* (2013) 222 Cal.App.4th 741, 762-763.)

**DISPOSITION**

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J.
CHAVEZ

We concur:

_____, P. J.      _____, J.
BOREN                                ASHMANN-GERST

13