Filed 5/22/25  P. v. Vientresca CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>GUIDO GIOVANNI VIENTRESCA,<br><br>    Defendant and Appellant. | F086827<br><br>(Super. Ct. No. VCF431883)<br><br>**OPINION** |

-ooOoo-

        APPEAL from a judgment of the Superior Court of Tulare County.  Antonio A. Reyes, Judge.

        Roberta Simon, under appointment by the Court of Appeal, for Defendant and Appellant.

        Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Eric L. Christoffersen and Christina Hitomi Simpson, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Appellant Guido Giovanni Vientresca was convicted by jury of several crimes arising out of a domestic violence incident against his girlfriend and a separate incident involving assault and evasion of police officers, for which he was sentenced to an aggregate prison term of 10 years four months. Prior to going to trial, appellant had pled no contest to three counts pursuant to a plea agreement in exchange for a stipulated prison term of three years eight months but subsequently withdrew his plea because his counsel had misadvised him on the amount of time he would have left to serve in custody. He appeals from the judgment of his conviction.

On appeal, appellant first seeks to vacate the court's order granting his request to withdraw his no contest plea. He contends the proceedings did not comply with the requirements of Penal Code[1] section 1018 because he did not verbally assent to the withdrawal and further contends the court abused its discretion by stating it had "no choice" but to allow the withdrawal. In the event we find his claim forfeited, he contends his attorney provided ineffective assistance by failing to object to the asserted errors.

Alternatively, appellant contends his conviction for evading an officer was not supported by sufficient evidence. Finally, appellant makes several challenges to his sentence, arguing that the court: (1) improperly punished him for exercising his right to a jury trial by sentencing him to a harsher sentence than what was stipulated to in his original plea agreement; (2) erred by failing to stay punishment on some counts pursuant to section 654; and (3) erred by running punishment on some counts consecutively when they should have run concurrently.

We remand the matter with directions to the trial court to stay punishment on either counts 9 and 10 or counts 6 and 7 in compliance with section 654. In all other respects, the judgment is affirmed.

---

[1] All further undesignated statutory references are to the Penal Code.

# FACTS

## First Incident

On September 22, 2019, appellant and his girlfriend of one year, E.P., were in the process of breaking up. They had gotten into an argument, and she went into another bedroom to sleep. In the middle of the night, appellant woke E.P. up and confronted her with accusations of her cheating on him. He had jumped on top of her, and inserted his fingers into her vagina, but E.P. could not remember whether he pulled down her pajama pants to do so. He went on to grab her, choke her, and slap her, and she testified she felt she might die. At one point, he pulled a knife on her and held it against her throat. E.P. eventually was able to get to her laptop in another room and sent a message to a friend for help. The police arrived, and appellant pulled E.P. into a closet and held her there. After the police were unsuccessful in making contact with appellant and E.P., the police eventually had to force entry into the residence. At that point, appellant pushed E.P. out of the closet and told her she could go but remained in the closet.

The police then tried to negotiate with appellant to come out of the closet, and he told them he was armed with a knife, which officers, including Sergeant Michael Short, could see through the partially open door, as well as a gun. He threatened to stab and shoot the officers if they came in. He told the officers he did not want to go back to prison and that the police would have to kill him. When Short pointed a taser at appellant in attempts to subdue him, appellant slammed the door shut. At one point, appellant stated he was filling the bathroom with flammable gas and was planning to blow them up. After multiple attempts to try to get appellant to exit, the police ended up pulling out of the scene to prevent the use of unnecessary force.

## Second Incident

On July 20, 2022, law enforcement was attempting to perform a felony traffic stop on appellant's vehicle due to another domestic violence incident by performing a vehicle containment technique. One of the vehicles was an undercover unit which positioned

itself at appellant's driver side. Officer Vincent Muto was driving and Officer Samantha Gonzales was the passenger. From their location next to appellant's vehicle on his driver side, both officers got out of their vehicle, drew their firearms, and began giving commands to appellant. Appellant "th[rew his] vehicle in reverse," hitting the door of the law enforcement vehicle, which, in turn, hit Officer Gonzales. Gonzales testified she and appellant made eye contact before he put his vehicle in reverse. Muto testified he was also at risk of being hit if appellant had hit the vehicle hard enough.

Appellant continued traveling backwards, going the wrong direction, and flipped around. Another officer came face to face with appellant as he was turning around. Appellant looked at the officer, threw his hands up and said, "Let's do this," and "gunned it" in drive. The undercover unit initiated its overhead lights and sirens and got into a vehicle pursuit with appellant. The pursuit was eventually called off for public safety reasons, including that appellant was running red lights, driving between speeds of 40 and 80 miles per hour, and passing vehicles using the median area.

Appellant was eventually located days later as a result of a cell phone ping warrant and arrested.

## PROCEDURAL BACKGROUND

Appellant was charged by a consolidated first amended information with, as to the September 2019 incident: sexual penetration by use of force (§ 289, subd. (a)(1)(A); count 1 [E.P.]); assault with a deadly weapon, to wit, a knife (§ 245, subd. (a)(1); count 2 [E.P.]); injuring a cohabitant (§ 273.5, subd. (a); count 3 [E.P.]); false imprisonment by violence (§ 236; count 4 [E.P.]); and resisting an executive officer (§ 69; count 5 [Officer Short]).

As to the July 2022 incident, appellant was charged with two counts of assault upon a peace officer (§ 245, subd. (c); counts 6 [Officer Gonzales] & 7 [Officer Muto]); fleeing a pursuing peace officer's motor vehicle while driving recklessly (Veh. Code,

4.

§ 2800.2; count 8); and two counts of resisting an executive officer (§ 69; counts 9 [Officer Gonzales] & 10 [Officer Muto]).

The information further alleged appellant personally used a deadly and dangerous weapon, to wit, a knife in the commission of counts 1 through 5 (§ 969f), which made counts 1 and 3 through 5 serious felonies (§ 12022, subd. (b)(1)). The information further alleged that appellant personally used a deadly and dangerous weapon, to wit, a vehicle in the commission of counts 6 through 10 (§ 969f), which made counts 8 through 10 serious felonies (§ 12022, subd. (b)(1)). Finally, the information alleged several aggravating circumstances applied to the crimes and appellant.

On March 15, 2023, appellant entered a not guilty plea to all counts and a denial of all special allegations.

On April 10, 2023, the parties informed the court appellant was going to accept an offer made by the People. The agreement consisted of appellant pleading no contest to count 1, amended to misdemeanor sexual battery (§ 243.4, subd. (e)(1)); count 3 as charged; and count 5 naming all three officers named in the information, in exchange for a stipulated sentence of three years eight months, made up of the midterm on count 3, with punishment on the weapon enhancement stayed, plus one-third the middle term on count 5, and dismissal of the remaining counts.

At the change of plea hearing, appellant was advised his total exposure was 12 years eight months. Appellant asserted he had had enough time to talk to his attorney, did not have additional questions for the court, was satisfied with the advice he received from his attorney, and was capable of understanding the nature of the proceedings. Appellant further asserted he understood he would not be going to trial and understood any immigration consequences of his plea. The parties stipulated to a factual basis for the plea based on the preliminary hearing transcripts. Appellant further asserted he understood his rights and waived them in order to enter the plea. Appellant pled in accordance with the plea agreement. The court found appellant had knowingly,

5.

intelligently, and voluntarily waived his constitutional rights and understood the consequences of his plea, and accepted the plea.

At the time set for sentencing, appellant's attorney represented appellant's desire to file a motion to withdraw his plea, and the matter was therefore continued.

Appellant's attorney subsequently filed a written motion to withdraw the plea pursuant to section 1018. The motion asserted that appellant was advised by counsel at the time of his plea that he would have approximately six and a half months remaining on his sentence, but counsel made a calculation error, and appellant actually had 13 and a half months left to serve. The motion further asserted appellant would not have pled if he had known the actual time he would remain incarcerated. Attached to the motion were declarations by counsel and appellant stating the above.

The hearing on the motion was conducted on May 30, 2023. The prosecutor noted she understood appellant was misadvised by counsel and stated, "I don't know that I have any grounds to oppose other than to say that the Court fully advised [appellant] of the consequences of his plea." When asked if appellant's counsel had anything to add, he responded, "No." The court did not address appellant directly, and appellant did not speak. The court stated: "All right. I have no choice, but I have to grant the motion on the plea to set aside." The matter was set for trial.

Following trial, which took place on August 1, 2023, to August 7, 2023, the jury found appellant guilty of the lesser included offense of attempted sexual penetration by use of force (§§ 664/289, subd. (a)(1)(a)) as to count 1, and as to the other counts, guilty as charged. The jury additionally found all charged enhancements true and the following aggravating circumstances true as to all counts: that the crime involved great violence, great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness; the defendant was armed with or used a weapon at the time of the commission of the crime; the victim was particularly vulnerable, the defendant took

advantage of a position of trust or confidence to commit the offense; and the defendant engaged in violent conduct that indicates a serious danger to society.

The court sentenced appellant to state prison as follows:  as to count 6 (July assault against Officer Gonzales), the middle term of four years; as to count 7 (July assault against Officer Muto), one-third the middle term of 16 months; as to count 3 (injuring a cohabitant), one-third the middle term of one year, plus four months for the weapon enhancement; as to count 1 (attempted sexual penetration by force), one-third the middle term of one year; as to count 4 (false imprisonment by violence), the middle term of two years, to run concurrent to count 6; as to count 5 (September resisting Officer Short), one-third the middle term of eight months; as to count 8 (fleeing officer's motor vehicle), one-third the middle term of eight months; as to count 9 (July resisting Officer Gonzales), one-third the middle term of eight months; and as to count 10 (July resisting Officer Muto), one-third the middle term of eight months, for a total prison term of 10 years four months.[2]  The court stayed punishment on count 2 (assault with a deadly weapon against E.P.) and the weapon enhancement in count 1.

## DISCUSSION

### I. The Court's Order Granting Appellant's Motion to Withdraw His No Contest Plea

Appellant argues the judgment must be vacated and the matter remanded so that he can be given the option to plead in accordance with the original plea agreement.  He argues two grounds for error: that (1) his plea was not withdrawn personally by him in open court in accordance with section 1018, and (2) the court abused its discretion in allowing the withdrawal because its comments in granting the motion suggested it

---

[2]    It appears the sentencing minute order and abstract of judgment both incorrectly state the total term is 10 years, which appears to be the result of an inadvertent oversight or mathematical error.  Because the matter is being remanded for the court to stay sentences on two counts, an amended abstract of judgment shall be prepared, and we are ensured the total time will be corrected.

mistakenly believed it was required to do so.  In the event we find his claims forfeited, appellant further contends his attorney provided ineffective assistance of counsel by failing to object to either error.  In evaluating appellant's claims, we conclude he has not established that a reversible error occurred at the hearing on his motion to withdraw his plea nor that his counsel provided any ineffective assistance.

### A.    *Any Incompliance with Section 1018 Was Harmless*

Section 1018 provides in pertinent part:  "Unless otherwise provided by law, every plea shall be entered or withdrawn by the defendant himself or herself in open court." Relying on *Johnson v. Superior Court* (1981) 121 Cal.App.3d 115 (*Johnson*), appellant argues that section 1018 required appellant to verbally affirm his concurrence with the motion to withdraw his plea at the hearing on the motion.

In *Johnson*, the petitioner pled guilty pursuant to a plea agreement wherein he would be able to withdraw his guilty plea and have the original information reinstated if the Community Release Board (CRB) set his term in excess of seven years.  The CRB set the term at eight years, and informal attempts by the court to convince the CRB to reduce the term to seven years were unsuccessful.  The petitioner's counsel filed a motion to withdraw the guilty plea, which the court granted, and the petitioner "said nothing during the hearing." (*Johnson*, *supra*, 121 Cal.App.3d at p. 117.)  The petitioner was subsequently unable to enter into a satisfactory plea bargain, and the original charges were reinstated.  (*Ibid*.)  New counsel was substituted to defend appellant and filed a motion to vacate the withdrawal of the guilty plea, claiming the requirements of section 1018 had not been met.  (*Ibid*.)  The court denied the motion, and the petitioner filed a petition for writ of mandate.  (*Ibid*.)

The *Johnson* court issued a preemptory writ of mandate directing the trial court to vacate the order granting the petitioner's motion to withdraw his guilty plea, stating:  "We conclude that regardless of what authorization is given out of court, compliance with … section 1018 requires that a defendant make some expression in open court which

authorizes or adopts a motion made on his behalf to withdraw his plea. Here, petitioner's silence during the hearing on the motion to withdraw the plea did not satisfy this requirement." (*Johnson*, *supra*, 121 Cal.App.3d at p. 119.)

Johnson has little negative treatment by subsequent case law, and we have found no case which disagrees with its interpretation of section 1018. Respondent does not offer any analysis or distinguishment of *Johnson*. Instead, respondent contends appellant's presence in open court and the affidavit he signed supporting the motion satisfied the requirements of section 1018. However, in our review of the record, it appears the signature line on the declaration purported to be by appellant in the record on appeal is blank, which leaves appellant's mere presence—and silence—at the hearing, which we do not find distinguishable from the situation in *Johnson*. The sole case respondent relies on—*People v. Weaver* (2001) 26 Cal.4th 876—is readily distinguishable. In *Weaver*, a not guilty by reason of insanity case, the relevant portion of the plea colloquy demonstrated the defendant verbally assented to the court's question as to whether he adopted counsel's statements. (*Id.* at pp. 963–964.) The *Weaver* court specifically relied on the defendant's *verbal* assent as satisfying the requirements of section 1018. (*Id.* at p. 964.) Here, appellant made no such verbal utterance.

This is all to say the purported error here was a very narrow one—that appellant did not make any open expression of assent to withdrawing his plea in open court at the time of the hearing on the motion as required by section 1018. As we will explain, the evidence before us demonstrates appellant clearly assented to the withdrawal of his plea. Accordingly, assuming only for the purpose of this case, that some verbal assent by appellant at the time of the hearing on the motion was required, under the totality of the circumstances, we find any error harmless beyond a reasonable doubt.

The purpose of the statute is to assure the plea is the defendant's own, and this end is served if the defendant authorizes or adopts counsel's statement of his plea. (*People v. Martin* (1964) 230 Cal.App.2d 62, 63 [recognizing that personal entry of the plea is not

9.

required if the defendant expresses agreement with his attorney's recitation of the plea].) We conclude the purpose of the statute was met as evidenced by the circumstances surrounding appellant's withdrawal of his plea. Here, even though appellant did not verbally affirm he desired to withdraw his plea, we consider the following factors to determine the withdrawal of his no contest plea was his own and can easily conclude, beyond a reasonable doubt, that had the court addressed appellant at the hearing inviting him to affirm whether he desired to withdraw his plea, the outcome of the hearing would have been the same and would have resulted in the withdrawal of appellant's plea.[3]

First, appellant was personally present both at the hearing on the motion and the sentencing hearing that directly preceded it, where counsel asked that sentencing be continued and indicated appellant's intention to withdraw his plea.[4] At the latter hearing, after appellant's counsel stated his intention, the court asked appellant if he waived time for sentencing "[b]ased on [his] attorney's request," and appellant responded in the affirmative.

Second, the record indicates appellant knew his rights surrounding his plea and withdrawal of the same. He was present at the entry of his no contest plea where he was

_____

[3] We reject appellant's suggestion later in his briefing that undergoing trial and receiving a less favorable sentence constituted prejudice, requiring reversal. The case he relies on—*Lafler v. Cooper* (2012) 566 U.S. 156—is inapposite. *Lafler* is an ineffective assistance of counsel case, where the parties agreed the defendant's trial counsel's advice to the defendant to reject a plea offer was deficient performance and the defendant demonstrated there was a reasonable probability he and the trial court would have accepted the plea. (*Lafler*, at pp. 174–175.) The U.S. Supreme Court rejected the Solicitor General's argument that the defendant could have suffered no prejudice because he was convicted at a fair trial. (*Id*. at pp. 164–170.) These situations are factually distinguishable because in *Lafler*, the defendant established he would have accepted the plea offer but for his ineffective assistance of counsel; where, as here, there is no evidence before us that, but for any error, appellant would have not sought to withdraw his plea; thus, the nature of the error was very different.

[4] As we have stated above, the affidavit attached to the motion was unsigned and we are not considering it.

subjected to a thorough colloquy regarding his rights. In addition, appellant had a lengthy criminal history dating back to 1988, including misdemeanors, felonies, and parole violations, and sentences including probation, county jail time, and a prison term. Appellant's criminal history indicates he had a basic understanding of the criminal justice system, including the consequences of pleading versus not pleading.

Third, and perhaps most strikingly, the record indicates the People offered the same offer to appellant following his withdrawal and before trial commenced, and he declined to accept. At a trial confirmation hearing on July 27, 2023, approximately five days before trial commenced, after the court asked for a status update, the prosecutor represented: "Your Honor, I relayed the same offer we had made previously before the plea was withdrawn. I spoke with [defense counsel], and I haven't been provided any information about what other kind of resolution they were looking for. So at this time the People are just ready to confirm." Defense counsel responded only by saying, "We're ready to confirm as well," at which point the hearing was concluded. Appellant was personally present when the People made this representation and when his counsel implicitly affirmed the offer was rejected and that appellant's only intention was to go to trial. The record indicates appellant had the option to re-enter his no contest plea and did not do so, seriously undermining his claim he was somehow prejudiced by the court's granting of his motion to withdraw his plea.

Finally, appellant underwent an entire trial, and at no point did he assert, through counsel or otherwise, that he did not want to.

The case appellant relies on—*Johnson*—does not persuade us that reversible error occurred. While the remedy in *Johnson* was to issue a preemptory writ of mandate directing the trial court to vacate the order granting the petitioner's motion to withdraw his guilty plea without discussing harmlessness (*Johnson*, *supra*, 121 Cal.App.3d at p. 119), *Johnson* was at a vastly different procedural stance than the present case, and we do not believe the same remedy is appropriate here. *Johnson* is distinguishable in that the

11.

record indicates the defendant did not want to go to trial or accept an alternate plea bargain and counsel timely sought to remedy the improper withdrawal. Appellant has cited no case that deals with a situation where a defendant receives the benefit of withdrawing a no contest or guilty plea, undergoing trial and sentencing, and after raising the issue for the first time on appeal, succeeding in being able to re-enter the original plea agreement.

Appellant has failed to establish a miscarriage of justice or that any error contributed to the outcome of the hearing on his motion to withdraw his plea.

### B. *The Court Did Not Abuse its Discretion in Granting Appellant's Motion to Withdraw His Plea*

Moving to appellant's substantive contention that the court abused its discretion in granting his motion, we conclude he has not demonstrated error.

Courts implementing section 1018 have established a stringent standard for overturning a guilty plea, stating, for example, " 'pleas resulting from a bargain should not be set aside lightly and finality of proceedings should be encouraged.' " (*People v. Weaver* (2004) 118 Cal.App.4th 131, 146; § 1018.) The defendant seeking to withdraw his plea has the "burden to produce evidence of good cause by clear and convincing evidence." (*People v. Wharton* (1991) 53 Cal.3d 522, 585.) "Mistake, ignorance or any other factor overcoming the exercise of free judgment is good cause for withdrawal of a guilty plea." (*People v. Cruz* (1974) 12 Cal.3d 562, 566.) "A plea may not be withdrawn simply because the defendant has changed his mind." (*People v. Nance* (1991) 1 Cal.App.4th 1453, 1456.)

" ' "When a defendant is represented by counsel, the grant or denial of an application to withdraw a plea is purely within the discretion of the trial court after consideration of all factors necessary to bring about a just result." ' " (*People v. Nocelotl* (2012) 211 Cal.App.4th 1091, 1096.) "[W]hen a trial court's decision rests on an error of

law, that decision is an abuse of discretion." (*People v. Superior Court* (*Humberto S.*) (2008) 43 Cal.4th 737, 746.)

Appellant contends the court abused its discretion because it mistakenly believed it had "no choice" but to grant the motion because "[c]ustody credits was a collateral consequence." Respondent asserts the trial court's statement that it had "no choice" but to grant the motion did not demonstrate it did not believe it "lacked discretion to deny the motion, but that it was apparent good cause had been established." We agree with respondent.

We presume the court knew and followed the law (*People v. Ramirez* (2021) 10 Cal.5th 983, 1042) and, here, there is no evidence the court was unaware of its discretion under the circumstances surrounding the hearing. Appellant's written motion contained the proper standard, stating withdrawal " 'is within the sound discretion of the trial court after due consideration of the factors necessary to bring a just result.' " Nowhere in appellant's motion did he argue the court was required to allow the withdrawal; rather, the motion set forth the relevant facts and argued they constituted good cause for withdrawal. At the hearing, as respondent points out on appeal, the People agreed good cause had been established. We cannot say in the context of the circumstances of the motion and the hearing that the court misunderstood its discretion.[5]

We find no abuse of discretion.

---

[5]     Even if we were to find the court misunderstood its discretion, we would nonetheless find appellant has not demonstrated a colorable claim due to the doctrine of invited error by making the motion to withdraw the plea. (*People v. Bailey* (2012) 54 Cal.4th 740, 753 [" 'If defense counsel intentionally caused the trial court to err, the appellant cannot be heard to complain on appeal.' "]; *People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 49 ["In cases involving an action affirmatively taken by defense counsel, we have found a clearly implied tactical purpose to be sufficient to invoke the invited error rule."].)

13.

**C.** ***Appellant Has Not Established Ineffective Assistance of Counsel on This Record***

Finally, appellant contends he received ineffective assistance of counsel because his attorney failed to object below. We decline to find ineffective assistance on this record.

To prevail on an ineffective assistance of counsel claim, appellant must establish that (1) the performance of his trial counsel fell below an objective standard of reasonableness and (2) prejudice occurred as a result, that is, there is a reasonable probability the defendant would have obtained a more favorable outcome. (*Strickland v. Washington* (1984) 466 U.S. 668, 687; *People v. Anderson* (2001) 25 Cal.4th 543, 569.) "When examining an ineffective assistance claim, a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance. It is particularly difficult to prevail on an *appellate* claim of ineffective assistance. On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)

We decline to find ineffective assistance on this record. The record indicates to us that trial counsel was merely acting in compliance with appellant's wishes. There is no evidence to support that going to trial was not appellant's objective. Absent any evidence regarding appellant and his trial counsel's communications outside the record, which is only appropriately brought via petition for writ of habeas corpus, we cannot find ineffective assistance.

14.

**II.    Sufficiency of the Evidence to Support the Evading an Officer Conviction (Count 8)**

In assessing a claim of insufficiency of the evidence, we review "the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Snow* (2003) 30 Cal.4th 43, 66.)  Reversal on insufficiency of the evidence is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]." (*People v. Redmond* (1969) 71 Cal.2d 745, 755.)  "If the circumstances reasonably justify the findings made by the trier of fact, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*People v. Jennings* (2010) 50 Cal.4th 616, 639.)

Vehicle Code section 2800.2 defines the offense as a person fleeing or attempting to elude a pursuing peace officer in violation of Vehicle Code section 2800.1 while driving and a "willful or wanton disregard for the safety of persons or property."  A violation of Vehicle Code section 2800.1 requires a showing of all these conditions: (1) the peace officer's vehicle exhibits "at least one lighted red lamp visible from the front and the person either sees or reasonably should have seen the lamp"; (2) the peace officer's vehicle is "sounding a siren as may be reasonably necessary"; (3) the peace officer's vehicle is "distinctively marked"; and (4) a peace officer is operating the vehicle and "wearing a distinctive uniform." (Veh. Code, § 2800.1, subd. (a).)

Appellant contends none of the conditions set forth in Vehicle Code section 2800.1, subdivision (a) were supported by substantial evidence.  Specifically, he asserts there was no evidence that the officers' vehicles' red lights or sirens were activated or that their vehicles had distinctive markings, and further asserts that "the

15.

[officers'] uniforms may not be sufficient or visible." Appellant's assertions are without merit.

Substantial evidence supports the jury's findings underlying appellant's evading an officer conviction. The jury could have reasonably determined the vehicle was sufficiently distinctively marked in that "it has features that are reasonably noticeable to other drivers, including, a red lamp, siren, and at least one other feature that makes it look different form [*sic*] vehicles that are not used for law enforcement purposes," as they were instructed. (CALCRIM No. 2181.) The vehicle was described as an all-black Dodge Charger with Cal exempt plates and emergency lighting equipment, including flashing blue and white lights with a forward-facing red light, and external spot lamps on both the driver's and passenger's side, and a siren. Gonzales testified that she "believe[d] most people believe it to be a police car." She further testified that when they were pursuing appellant, their lights and sirens were activated. The jury could have reasonably determined the "Cal exempt plates" and "external spot lamps" qualified as features that made the vehicle look like a law enforcement vehicle in addition to the red lamp and siren. The jury could have also reasonably inferred that the forward-facing red light was included in the activated lights when the vehicle was pursuing appellant. The jury could have also reasonably inferred appellant could see the vehicle based on his evasive driving maneuvers.

Further, the uniforms Muto and Gonzales were wearing were described as the "Visalia Police Department Class B uniform, which is a blue polo with a blue tactical pants with pockets, as well as a black exterior or external vest carrier that says 'police' on the front and 'police' on the back with [their] names, also the Visalia Police Department patches on both shoulders and the Visalia Police Department badge sitting … on the left breast as well as next to the firearm, the physical badge." The jury could have reasonably determined this was sufficiently distinctive. The jury was instructed that a "distinctive uniform … does not have to be complete or of any particular level of formality."

16.

(CALCRIM No. 2181.) The description given at trial reasonably met this description, and Gonzales testified appellant looked at her before he backed up prior to triggering the pursuit and the jury could have concluded he was clearly aware the police were attempting to initiate a stop.

For these reasons, we conclude appellant's conviction for evading an officer in count 8 was supported by sufficient evidence.[6]

## III. Sentencing Issues

### A. *Asserted Punishment for Exercising Right to Jury Trial*

Appellant contends the trial court abused its discretion in sentencing appellant to a 10-year four-month prison term in comparison to the three year eight month term stipulated by his original plea agreement. Appellant contends the court's "comments" and "behavior" at sentencing demonstrated it "was punishing appellant for exercising his constitutional right to a jury trial. In pronouncing the judgment, the court made several comments on the evidence, and at the end of its comments stated, "And then, you know, at some point you had a resolution of this case much more favorable than what you're getting at sentencing, and then you decide to set aside, which is your right to do that, I just don't understand. You're like someone who just is out of control. Okay?" We do not find appellant's sentence was in any way affected by the court trying to punish him for exercising his right to a jury trial.

---

[6] We reject appellant's contention that we must also conclude substantial evidence supports an evading charge for testimony at trial that appellant was involved in a police chase on a later date. The record does not support that this was a possible basis for the evading charge in count 8 because the information listed July 20 as the date of the offense and Tulare County as the location of the offense. The subsequent chase appellant refers to was in Fresno County. We note testimony also shows another chase occurred on July 28 in Madera County, when appellant was ultimately apprehended, and we conclude for the same reasons, this was not a possible basis for the offense charged in count 8 either.

17.

Appellant relies primarily on *In re Lewallen* (1979) 23 Cal.3d 274 (*Lewallen*) to support his claim. In *Lewallen*, the defendant rejected the People's offer of a negotiated sentence of 30 days in jail, suspended; a fine; and one-year informal probation for his plea to drunk driving, carrying a loaded firearm, and possession of a firearm by an ex-felon. (*Id*. at p. 276.) The defendant would not accept any plea negotiation that did not include dismissal of the weapon charges. (*Ibid*.) As noted by our high court, ultimately the defendant's "intransigence was vindicated," as following trial, he was convicted of the DUI and acquitted of all remaining charges. (*Ibid*.) The trial judge sentenced the defendant to 90 days in county jail, suspended; a fine; and three years' formal probation with 30 days in county jail to be served on weekends and several conditions including drug and alcohol rehabilitation, "drunk driving school" and other weapon related conditions. (*Id*. at pp. 276–277.)

In the habeas corpus proceedings, the defendant argued the sentencing court improperly punished him for exercising his right to a jury trial, and the *Lewallen* court agreed, relying on two of the sentencing court's comments:

> "First, in response to defense counsel's suggestion that placing defendant on informal probation would suffice, the trial judge responded, 'You mean whether or not there's a disposition or not after a jury trial?' Second, after sentencing the trial judge stated, 'I think I want to emphasize there's no reason in having the District Attorney attempt to negotiate matters if after the defendant refuses a negotiation he gets the same sentence as if he had accepted the negotiation. It is just a waste of everybody's time, and what's he got to lose. And as far as I'm concerned, if a defendant wants a jury trial and he's convicted, he's not going to be penalized with that, but on the other hand he's not going to have the consideration he would have had if there was a plea.' " (*Lewallen*, *supra*, 23 Cal.3d at p. 277.)

Appellant contends the comments made by the court here are comparable to those in *Lewallen*. We disagree. In *Lewallen*, the court stated in effect that a defendant who rejects a plea agreement should get a harsher sentence if he "waste[s] everybody's time" by proceeding to trial. (*Lewallen*, *supra*, 23 Cal.3d at p. 277.) The trial court's

18.

comments in the present case were a far cry from the comments made in *Lewallen* because the trial court here did not suggest it was giving appellant a longer sentence *because* he withdrew his plea. Our view of the court's comments is that it was pointing out appellant's decision to withdraw his plea resulted in a longer sentence based on the jury's verdict rather than any efforts on the part of the court to improperly punish appellant.

Additionally, the defendant in *Lewallen* specifically did not want to plead to any weapons charges, and was *acquitted* of those charges; that is, he received a more favorable outcome than what he was being asked to plead to as part of the plea agreement he rejected but received a harsher sentence. In contrast, appellant here rejected an agreement where he would be pleading to a relatively small portion of the charged offenses but was ultimately convicted of all 10 counts plus enhancements and aggravating circumstances. Probation recommended a term of 12 years eight months, and the court had the authority to sentence appellant to even more time, given that the jury found several aggravating circumstances true. With the exception of the court's failure to apply section 654 to two of the counts, as we describe below, the court's sentence was wholly appropriate based on the verdict and the relevant circumstances, and not nearly as lengthy as it could have been considering the several aggravating circumstances the jury found true.

We conclude appellant has not established the court inappropriately punished him for exercising his right to a jury trial.

### B.    *Failure to Stay Counts Pursuant to Section 654*

Appellant contends, with regard to the assault on E.P., the trial court should have stayed either count 1 (attempted sexual penetration) or count 3 (injuring a cohabitant), and, with regard to the assault on the police officers, either counts 6 and 7 (assault with a deadly weapon) or counts 9 and 10 (resisting an executive officer).

Section 654, subdivision (a) reads in relevant part: "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." This has been interpreted to mean that the statute "generally precludes multiple punishments for a single physical act that violates different provisions of law [citation] as well as multiple punishments for an indivisible course of conduct that violates more than one criminal statute [citations]." (*People v. Newman* (2015) 238 Cal.App.4th 103, 111–112, italics omitted.) Whether a course of criminal conduct is divisible depends on the intent and objective of the actor. If all the offenses were incidental to one objective, the defendant may be punished for any one of them, but not for more than one. (*People v. Jackson* (2016) 1 Cal.5th 269, 354.) But if the defendant harbored multiple objectives, independent of and not merely incidental to each other, he may be punished for each violation committed in pursuit of each independent objective, even though the violations share common acts or were parts of an otherwise indivisible course of conduct. (*People v. DeVaughn* (2014) 227 Cal.App.4th 1092, 1112.)

Whether section 654 applies is a question of fact for the trial court, which has broad latitude in making its determination. Its findings will be upheld if supported by substantial evidence, and we view its determination in the light most favorable to the judgment. (*People v. Jackson*, *supra*, 1 Cal.5th at p. 354.) "When a trial court sentences a defendant to separate terms without making an express finding the defendant entertained separate objectives, the trial court is deemed to have made an implied finding each offense had a separate objective." (*People v. Islas* (2012) 210 Cal.App.4th 116, 129.)

### 1.     Attempted Sexual Penetration and Injury on a Cohabitant

Appellant asserts that because all offenses against E.P. were "incident to the same objective — to control her," punishment on either count 1 (the attempted sexual penetration) or count 3 (injuring a cohabitant) must be stayed. We disagree.

Appellant's proffered objective is too "broad and amorphous" to require applicability of section 654. (See *People v. Perez* (1979) 23 Cal.3d 545, 552 [objective "to obtain sexual gratification … much too broad and amorphous to determine the applicability of section 654"].) Here, the trial court could have reasonably concluded appellant had the intent and objective to physically injure E.P. by assaulting her and the intent and objective to sexually violate her by attempting sexual penetration. These are two distinct injuries and we believe culpability is higher with the combination of intended physical violence and sexual violation than just one form of injury or violence.

We have no trouble concluding the court's finding that section 654 did not apply was supported by substantial evidence.

### 2. Assault Against an Officer and Resisting an Officer

Appellant also contends either counts 6 and 7 or 9 and 10 must be stayed pursuant to section 654 because the assault and resisting offenses against Officers Muto and Gonzales were "incident to his sole objective to escape." We agree with appellant that section 654 prohibited punishment for both the assault and resisting offenses, but for a different reason.

In our view of the record, the assault and resisting charges simply arose from the same physical act, as appellant argued at sentencing, making the test on whether appellant shared separate intents or objectives irrelevant. The court's implied finding that the assault and resisting offenses constituted different acts was not supported by evidence we could find in the record, and our review reveals that the opposite is true.

First, in her closing argument, the prosecutor relied on the act of driving into the door of the vehicle as the basis for both the assault and resisting charges.

Second, the jury was instructed that in order to find appellant guilty of assault, they had to find he willfully directed his vehicle in a manner that would directly and probably result in the application of force likely to produce great bodily injury. (CALCRIM No. 860; § 245, subd. (c).) The jury was instructed that to find appellant

guilty of resisting an executive officer, they had to find appellant "used force or violence to resist," and it was alleged and found true that appellant used a vehicle during the commission of the crime.  (CALCRIM No. 2652; §§ 69, 12022, subd. (b)(1).)  The act of backing his vehicle into Gonzales and Muto's vehicle, causing Gonzales to be struck, appeared to be the only act of force or violence used against those named officers.

Finally, at sentencing, appellant asked the court to find section 654 applied to counts 9 and 10 because they arose out of the same act as counts 6 and 7 where appellant "made contact with [Officer Gonzales and Officer Muto's] vehicle."  Counsel argued, "So I'm not sure how far you commit a 245(c) and don't commit a PC 69."  The prosecutor responded, "I think that the elements don't require the same facts under the law, and I think that they should be treated as separate crimes for purposes of sentencing."  The court did not comment on the issue but imposed and executed sentence on counts 6, 7, 9, and 10.

The foregoing demonstrates no plausible argument for declining to stay punishment on either the assault or resisting convictions.  The prosecutor's argument that the offenses had different elements was not relevant to the analysis of whether they referred to either the same act or an indivisible course of conduct prohibiting multiple punishment.  Respondent's argument on appeal is not much more helpful.  Respondent contends the assault charges and the resisting charges "involved separate acts and had separate objectives," with the intent of the assault being "to physically injure" and the intent of the resisting was to "escape pursuit."  Respondent does not expand on what the separate acts were that constituted each offense, and respondent's attempt to attach two separate objectives to one single act does not avoid application of section 654.  (See *People v. Jones* (2012) 54 Cal.4th 350, 359–360.) ["intent or objective" test does not apply to a single act even when an offender may have multiple objectives in committing a single act].)

Because we conclude the assault charges in counts 6 and 7 and the resisting charges in counts 9 and 10 arose from the same act, we must remand for the court to decide which two counts on which to stay punishment. (See § 654 [an act punishable by more than one provision of law "may be punished under *either* of such provisions"], italics added.)

### C. *Failure to Run Terms Concurrently*

Alternative to his claim regarding section 654, appellant claims that as to the assault on E.P., counts 1 and 3 should have been ordered to run concurrently because the "crimes and their objectives were not independent of each other, and were committed closely in time and place." We disagree.

Section 669 states the general rule that when a person is convicted of two or more crimes, the sentences "shall run concurrently or consecutively." "It is well established that a trial court has discretion to determine whether several sentences are to run concurrently or consecutively." (*People v. Bradford* (1976) 17 Cal.3d 8, 20; see § 669, subd. (a).)

California Rules of Court, rule 4.425, sets forth some of the factors used in determining whether to impose consecutive or concurrent sentences. These include, among others, whether the crimes and their objectives were predominantly independent of each other, whether they involved separate acts of violence or threats of violence, and whether the crimes were committed at different times and or places. (Cal. Rules Ct., rule 4.425(a).) The court may also consider any circumstances in aggravation or mitigation in deciding whether to impose consecutive rather than concurrent sentences, except facts: "used to impose the upper term"; "used to otherwise enhance the defendant's sentence"; or are "element[s] of the crime." (§ 1170, subd. (b); Cal. Rules Ct., rule 4.425 (b).)

Here, the court was within its discretion to impose consecutive sentences on counts 1 and 3. The court could have reasonably relied on the factors that support its

finding section 654 did not apply as well as the aggravating circumstances present in the case, which were not used for any purpose prohibited in California Rules of Court, rule 4.425(b) to support its imposition of consecutive sentences.  We find no error.

## **DISPOSITION**

The matter is remanded with directions to the trial court to stay punishment on either counts 9 and 10 or counts 6 and 7.  The court shall prepare an amended abstract of judgment and transmit the same to the appropriate authorities.  (See *ante*, fn. 2.)  In all other respects, the judgment is affirmed.

DE SANTOS, J.

WE CONCUR:

PEÑA, Acting P. J.

FAIN, J.*

---

*       Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

24.